IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 35055

ERICK VIRGIL HALL, )
)
    Petitioner-Appellant, )        Boise, December 2010 Term
)
v. )        2011 Opinion No. 67
)
STATE OF IDAHO, )        Filed:  May 27, 2011
)
    Respondent. )        Stephen W. Kenyon, Clerk
)
)

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Thomas F. Neville, District Judge.

Permissive appeal from two interlocutory orders, district court decision affirmed.

Molly J. Huskey, State Appellate Public Defender, Boise, for appellant.  Ian H. Thomson, Deputy State Appellate Public Defender argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent.  L. LaMont Anderson, Deputy Attorney General, argued.

_____

BURDICK, Justice

This case comes before this Court on a permissive appeal from two interlocutory orders ((1) Order Granting in Part and Denying in Part Petitioner's Supplemental Motion for Discovery and, (2) Order Denying Petitioner's Motion for Juror Contact) that were entered by the district court while capital post-conviction proceedings were pending for Erick Virgil Hall.  Hall argues that the district court erred in prohibiting post-conviction contact with the jurors who deliberated in the underlying criminal case, and in denying Hall's motion for a court-ordered deposition of his trial counsel's investigator.  We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In 2004, a jury found Hall guilty of first-degree murder, first-degree kidnapping and rape. The jury also found four statutory aggravating factors, and after weighing each individual aggravating factor against the mitigating circumstances, found that it would not be unjust to impose the death penalty on Hall.  Hall was subsequently sentenced to death for first-degree

murder, with consecutive unified fixed life sentences for the offenses of first-degree kidnapping and rape; such judgments were entered on January 19, 2005. Hall filed a Notice of Appeal on January 21, 2005, and the State Appellate Public Defender was appointed to represent Hall during post-conviction proceedings.

On March 1, 2005, Hall filed a petition for post-conviction relief, pursuant to I.C. § 19-2719. On approximately January 6, 2006, the district court orally limited contact between Hall's attorneys and the jurors. Hall filed a motion for reconsideration on January 20, 2006. At a hearing on February 15, 2006, the district court held that counsel could not contact jurors without the prior express permission of the court. On June 1, 2007, Hall filed a motion for juror contact with an attached memorandum in support of that motion. The State objected to Hall's motion, and at a hearing on August 8, 2007, the district court considered both the general and specific inquiries proposed by Hall and denied the motion for juror contact. The district court issued a written order denying Hall's motion on September 13, 2007.

On January 5, 2006, Hall filed a motion seeking to depose the attorneys who had represented him at trial, and their investigator, Glenn Elam. The district court allowed the deposition of trial counsel, but denied leave to depose Elam. In response to renewed and supplemental requests for the same, the district court considered the matter fully at a hearing and entered a written order on September 17, 2007, denying leave to depose Elam, finding that "[n]o showing has been made by the petitioner that deposition is necessary to protect his substantial rights." On August 23, 2007, Hall filed a motion for permission to appeal that order, submitting a supporting affidavit written by his own investigator, Michael Shaw. At a hearing on November 15, 2007, the trial court denied Hall's motion, expounding upon his reason for denying both contact with the jury and the deposition of Elam. On January 18, 2008, a written order was entered denying Hall's motion. Hall filed a motion for permission to appeal to this Court on November 29, 2007, which was granted on February 27, 2008.

## II. ISSUES ON APPEAL

1. Whether the district court had the inherent authority to enter an order restricting appellate counsel's contact with jurors.

2. Whether the district court violated Hall's attorneys' First Amendment rights by entering an order forbidding contact with the jurors absent prior court approval.

3. Whether the district court abused its discretion in denying Hall's motion for post-verdict communications with the jurors.

2

4. Whether the district court abused its discretion in denying Hall's motion to depose his trial counsel's investigator.

## III. STANDARD OF REVIEW

An application for post-conviction relief initiates a proceeding that is civil in nature. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010). "When considering alleged violations of constitutional rights, this Court defers to the district court's findings of fact unless clearly erroneous, but exercises free review over the trial court's determination as to whether constitutional requirements have been satisfied in light of the facts found." *State v. Thorngren*, 149 Idaho 729, 735, 240 P.3d 575, 581 (2010) (internal quotation omitted). "The decision to authorize discovery during post-conviction relief is a matter left to the sound discretion of the district court. Unless discovery is necessary to protect an applicant's substantial rights, the district court is not required to order discovery." *Baldwin v. State*, 145 Idaho 148, 157, 177 P.3d 362, 371 (2008) (internal citation omitted). *See also* I.C.R. 57(b). "In order to be granted discovery, a post-conviction applicant must identify the specific subject matter where discovery is requested and why discovery as to those matters is necessary to his or her application." *State v. LePage*, 138 Idaho 803, 810, 69 P.3d 1064, 1071 (Ct. App. 2003). As this Court stated in *Henderson v. Henderson Investment Properties, L.L.C.*:

> To determine whether there is an abuse of discretion this Court considers whether (1) the court correctly perceived the issue as one of discretion; (2) the court acted within the boundaries of such discretion and consistently with legal standards applicable to specific choices; and (3) the court reached its decision by an exercise of reason.

148 Idaho 638, 639–40, 227 P.3d 568, 569–70 (2010) (internal quotation omitted).

## IV. ANALYSIS

Hall appeals from two interlocutory orders entered by the district court in post-conviction proceedings: (1) an order denying a motion for post-verdict contact with jurors; and (2) an order denying a motion to depose his trial counsel's investigator. Hall argues that it was a violation of due process and free speech for the district court to impose prior restraints on his attorneys' contact with the jurors, and that the district court further abused its discretion in denying his specific motion for juror contact. Hall also argues that his due process rights were violated through the district court's denial of his request to depose his trial counsel's investigator, as Hall had shown that the protection of his substantial rights necessitated that deposition. These issues shall be addressed in turn.

3

**A. The district court had the authority to issue its order prohibiting appellate counsel from contacting trial jurors absent express approval by the court.**

Hall argues that as no statute, or rule promulgated by this Court, limits contact with the jury, the district court lacked the authority to enter its order. The State responds that it is within the inherent authority of the district court to protect jurors and the efficient operation of the court's proceedings.

In *Townsel v. Superior Court*, the Supreme Court of California was confronted with an identical question. 979 P.2d 963 (Cal. 1999). The Court first noted that, subsequent to the district court entering an order prohibiting juror contact absent prior court approval, the California Code of Civil Procedure had been amended to provide a similar rule. *Id*. at 964. The Court noted that trial courts have "inherent as well as statutory discretion to control the proceedings to ensure the efficacious administration of justice and that, in exercising such discretion, the trial court may deny to the losing party in a legal proceeding unqualified access to the jury after the conclusion of the trial." *Id*. at 968 (internal quotations omitted). The Court affirmed the trial court's authority to enter such an order. *Id.* at 969. *See also Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966) ("The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences."); *Miller v. United States*, 403 F.2d 77, 81–82 (2nd Cir. 1968) (upholding inherent authority of court to order all contacts with the jury to occur through the supervision of the court); *Talbot v. Ames Const.*, 127 Idaho 648, 652, 904 P.2d 560, 564 (1995) (discussing powers inherent to the judicial branch).

We find that a district court has the inherent authority to enter an order restricting contact with the jury, including post-verdict contact.

**B. The district court did not err in prohibiting Hall's counsel from contacting jurors without prior court approval.**

Hall argues that the district court violated his attorneys' First Amendment rights, as applied to the State by the Fourteenth Amendment, in creating a prior restraint on their speech by forbidding contact with jurors absent prior court approval. *See Alexander v. United States*, 509 U.S. 544, 550 (1993) ("The term prior restraint is used to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur. Temporary restraining orders and permanent injunctions—*i.e.*, court orders that actually forbid speech activities—are classic examples of prior restraints.") (Emphasis in the original) (internal quotation omitted).

4

Hall contends that this Court should apply the test developed by the United States Supreme Court in *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991), to determine whether the district court's order violated the Constitution. In *Gentile* the Court reviewed the Nevada Supreme Court's determination that an attorney had violated Nevada's rule restricting attorney statements to the media. *Id*. The State Bar of Nevada's sanctioning of the attorney was reversed, as the United States Supreme Court found the rule unconstitutionally vague as applied. *Id*. at 1048. The Court went on to consider the appropriate balance to be struck in regulating contact between attorneys and the press, where attorneys are representing a party in a pending case, and specifically whether the standard employed by Nevada (whether the restrained speech created a substantial likelihood of materially prejudicing the administration of justice) was constitutional. *See id.* at 1065–74. The Court found that the Nevada rule was constitutional as it adequately protected the First Amendment rights of attorneys while also putting a premium on the State's interest in a fair trial. *Id*. at 1075.[1]

The issue before this Court is materially different from that presented in *Gentile*. In *Gentile* the Court addressed the circumstances wherein prior restraints may be placed on an attorney's ability to make *extrajudicial* statements without violating that attorney's First Amendment rights. The issue before this Court pertains to contact with jurors as potential witnesses during post-conviction discovery, contacts which are part of a judicial proceeding. Therefore standards governing extrajudicial attorney speech are inapplicable.

It is well established that attorneys acting as advocates in a judicial proceeding do not enjoy the same First Amendment protections as the general public, both due to their membership in a specialized profession and their status as officers of the court. *See Gentile*, 501 U.S. at 1066 ("Membership in the bar is a privilege burdened with conditions. . . .") (quoting *In re Rouss*, 116 N.E. 782, 783 (N.Y. 1917)). *See also In re Sawyer*, 360 U.S. 622, 646–47 (1959) (Stewart, J., concurring) ("Obedience to ethical precepts may require abstention from what in other circumstances might be constitutionally protected speech."); *Haeberle v. Tex. Int'l Airlines*, 739 F.2d 1019, 1022 (5th Cir. 1984) ("By voluntarily assuming the special status of trial participants

---

[1] It is worth noting that the Court in *Gentile* did not hold that the Nevada rule constituted the constitutional minimum required under the First Amendment. *Id*. at 1075 ("We agree with the majority of the States that the 'substantial likelihood of material prejudice' standard constitutes a constitutionally permissible balance . . . ."). *See also Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 431 (Tex. 1998) (noting that the Court in *Gentile* did not adopt the substantial likelihood of material prejudice standard as "defining the outer limit on restrictions of lawyers' speech, but merely held that it was 'constitutionally permissible.'").

and officers of the court, parties and their attorneys subject themselves to greater restraints on their communications than might constitutionally be applied to the general public."); *Journal Pub'g Co. v. Mechem*, 801 F.2d 1233, 1236 (10th Cir. 1986) ("[W]hile a court may broadly proscribe attorney and party contact with former jurors, it does not have the same freedom to restrict press interviews with former jurors."). Idaho Rule of Professional Conduct 3.5 provides, *inter alia*, "[a] lawyer shall not: . . . (c) communicate with a juror or prospective juror after discharge of the jury if: (1) the communication is prohibited by law or *court order* . . . ." (Emphasis added).

Rules restricting attorneys' post-verdict contacts with jurors are widespread, and in the absence of local rules regulating such contacts the issue of post-verdict juror contact is often left to the discretion of the trial court. *See* Benjamin M. Lawsky, *Limitations on Attorney Postverdict Contact with Jurors*: *Protecting the Criminal Jury and its Verdict at the Expense of the Defendant*, 94 Colum. L. Rev. 1950, 1951 (1994). *See also Haeberle*, 739 F.2d at 1021 ("Federal courts have generally disfavored post-verdict interviewing of jurors."). Although it is a long-accepted precept that attorneys actively participating in a case, as officers of the court, must necessarily have their First Amendment rights restricted in ways that the general public does not, these rights are still afforded some degree of protection. *See Gentile*, 501 U.S. at 1073–74.

Courts determining the constitutionality of local rules and orders that restrict or prohibit post-verdict contact with jurors have attempted to balance attorneys' First Amendment rights and appellant/defendants' due process rights against the broader systemic public policy of ensuring fair trials and competent veniremen. In *Benton*, the Supreme Court of Texas noted that "it is well established in the law that post-verdict speech can also pose a sufficiently significant threat to the fairness of jury trials to justify curtailing the would-be speakers' constitutional interests." 980 S.W.2d at 432. The restriction that such rules impose upon attorneys' free speech is minimal and the public policy in favor of such restrictions is paramount. *See, e.g., Gagliano v. Ford Motor Co.*, 551 F.Supp 1077, 1079 (D. Kan. 1982) (noting that the local rule forbidding post-verdict juror contact absent Court approval was merely "a general regulation of plaintiff's counsel's speech in a very narrow and limited context. It incidentally limits counsel's speech, but is supported by a valid governmental interest, namely the interest in the orderly conduct of civil trials and the finality of verdicts, and is clearly outweighed by that interest.").

In *Haeberle*, a civil case, Haeberle appealed the district court's denial of his request for post-verdict contact with the jury, arguing that he wished to question the jury, not for purposes of impeachment, but merely to determine the basis upon which the verdict had been reached. 739 F.2d at 1020. The applicable local rule provided that:

> neither the attorney nor any party to an action nor any other person shall himself or through any investigator or other person acting for him interview, examine or question any juror, relative, friend or associate thereof either during the pendency of the trial or with respect to the deliberation or verdict of the jury in any action, except on leave of Court granted upon good cause shown.

*Id*. at 1020–21. The Fifth Circuit Court of Appeals noted that important public policy reasons support such a rule, for example: protecting the jury from post-verdict charges of misconduct; increasing the certainty of verdicts; and preserving court resources for what would be time-consuming and often futile proceedings. *Id*. at 1021. The Court noted that it had previously held that leave to interview jurors would only be granted where specific evidence of misconduct was demonstrated by either testimony or affidavit. *Id*. at 1021. *See also King v. United States*, 576 F.2d 432, 438 (2nd Cir. 1978), *cert denied*, 439 U.S. 850 (1978); *United States v. Franks*, 511 F.2d 25, 38 (6th Cir. 1975) (noting that trial judges exercise their discretion in determining whether to allow post-verdict questioning of the jury). The *Haeberle* Court noted that the First Amendment interests of the disgruntled litigant, and that litigant's counsel, were limited and outweighed by the jury's interest in privacy and the public interest in well-administered justice. 739 F.2d at 1022.

In *United States v. Kepreos*, the First Circuit Court of Appeals was confronted with a situation wherein a criminal case ended in a mistrial, and an Assistant U.S. Attorney contacted some of the jurors from the first trial, prior to the retrial, to inquire why the jury had not been convinced of the defendant's guilt. 759 F.2d 961, 967 (1st Cir. 1985). At the time no local rule prevented such contacts, but the Court took the opportunity to find that "henceforth this Circuit prohibits the post-verdict interview of jurors by counsel, litigants or their agents except under the supervision of the district court, and then only in such extraordinary situations as are deemed appropriate." *Id*. *See also Rakes v. United States*, 169 F.2d 739, 745–46 (4th Cir. 1948).

In accordance with the reasoning employed in the above-cited cases, we hold that attorneys' limited First Amendment rights implicated by an order prohibiting post-verdict juror contact absent a court order, are outweighed by the public policy interests in preserving a full and fair trial, protecting juror privacy and protecting the finality of verdicts. Therefore, we hold

7

that the district court did not err in using its inherent authority to enter an order prohibiting post-verdict juror contacts absent a showing of good cause to believe that juror misconduct occurred.

Where courts determine that juror contact may be appropriate, the preferable method of initiating such contact would be for the court to instruct parties seeking post-verdict contact with jurors to draft a letter to be sent to those jurors. These letters should stress that jurors have complete discretion to decline any contacts, or to terminate any agreed-upon contact once initiated. These letters should also include a statement that jurors should contact the court to report any contacts which occur despite the juror's decision to decline or terminate the same. Trial courts have the inherent authority to review such letters and enclosures and order counsel to make modifications accordingly.

## C. The district court did not abuse its discretion in denying Hall's motion for post-verdict juror contact.

The district court did not absolutely proscribe contact with the jurors, but rather ordered that Hall make a motion and receive express permission from the court prior to making any contact. After receiving Hall's motion and accompanying memorandum in support, as well as the State's objection to that motion, the district court held a hearing examining Hall's proposed specific and general inquiries point-by-point. The district court noted that, in considering the motion, it was only considering allowing contact on topics for which juror testimony (or affidavits) would be admissible under I.R.E. 606(b), specifically stating:

> My sense of Rule 606(b) is that it's not just an admissibility rule, because there would be no reason to contact a juror unless counsel hoped to find something that was admissible that would then come into court and would be governed by Rule 606.
> So to try to parse out and distinguish Rule 606 as an admissibility [sic] in Court in a post-conviction proceeding versus a contact with former jurors rule is, I think, ignoring the obvious, because the whole reason for contacting a former juror is to, from petitioner's point of view, apparently not having any evidence now that—or even indication of any strong likelihood now that the Court's instructions were not followed or that there was somehow juror misconduct, to get some information somewhere along the line in the total absence of any indication that maybe something untoward happened.
> So there's no reason to contact them unless you hope to admit it and to bring it forward to the Court. So to argue that 606 is only an admissibility rule and not a contact rule, I think ignores the whole purpose of the proceeding.

The district court concluded that Hall had failed to provide any evidence suggesting that any impropriety had occurred, for which testimony would have been permitted under I.R.E. 606(b), and denied the motion accordingly.

Similar public policy concerns were behind the creation of F.R.E. 606(b) and I.R.E. 606(b). In *Tanner v. United States*, the United States Supreme Court noted "common fairness requires that absolute privacy be preserved for jurors to engage in the full and free debate necessary to the attainment of just verdicts. Jurors will not be able to function effectively if their deliberations are to be scrutinized in post-trial litigation." 483 U.S. 107, 124–25 (1987) (quoting U.S. Code & Admin. News 1974, p. 7060 (discussing rationale behind F.R.E. 606)). Pursuant to I.R.E. 606(b):

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror and may be questioned about or may execute an affidavit on the issue of whether or not the jury determined any issue by resort to chance.

*See also Levinger v. Mercy Med. Ctr.*, *Nampa*, 139 Idaho 192, 197, 75 P.3d 1202, 1207 (2003) (holding that I.R.E. 606(b) does not prohibit juror affidavits revealing dishonesty during *voir dire*). "That rule, however, does not have application to information brought forth which challenges other conduct of jurors during the trial, apart from their deliberations." *Levinger*, 139 Idaho at 197, 75 P.3d at 1207.

In *Tanner*, Tanner and Conover were tried as co-defendants and convicted of mail fraud; prior to sentencing, Tanner filed a motion seeking, in relevant part, permission to interview the jurors. 483 U.S. at 112–13. Tanner's attorney submitted an affidavit in support of that motion, stating that he had received an unsolicited phone call from one of the jurors, wherein the juror informed the attorney that several jurors had consumed alcohol at lunch during the course of the trial, and consequently fallen asleep during afternoon court sessions. *Id*. at 113. The district court found that the juror testimony on that point was inadmissible under F.R.E. 606(b), and that the remaining evidence did not demonstrate good cause that the jury should be interviewed. *Id*.

9

at 115. Despite the court's order denying juror contact, a second juror visited Tanner's attorney in his office and was later interviewed by two private investigators. *Id.* The second juror stated that multiple jurors drank excessively during the course of the trial and ingested marijuana and cocaine. *Id.* at 115–16. On appeal, Tanner asserted that the district court had erred in not ordering an additional evidentiary hearing for the purposes of gathering juror testimony as to the use of drugs and alcohol by the jury during the trial. *Id.* at 116.

Tanner argued that regardless of F.R.E. 606(b)'s constraints on juror testimony, his Sixth Amendment guarantee to a fair trial before an impartial and competent jury required the district court to hold an evidentiary hearing. *Id.* at 126. The United States Supreme Court first noted that there are long-recognized and substantial concerns supporting the protection of jury deliberations from post-verdict examination. *Id.* at 127. The Court next articulated multiple aspects of the trial process that protect a defendant's Sixth Amendment interests, apart from post-verdict juror interviews, including: (1) *voir dire*; (2) the fact that the jury is observable during the course of the trial by the court, counsel and court personnel; (3) juror observations of each other—jurors may report inappropriate behavior to the judge prior to a verdict being entered; and (4) the availability to the defendant of the opportunity to impeach a verdict by non-juror evidence of misconduct. *Id.* On the basis of these alternative mechanisms that exist to ensure an impartial and competent jury, and the lack of non-juror evidence supporting Tanner's motion for post-verdict questioning of the jurors, the Court affirmed the district court's denial. *Id.*

As noted above, courts have consistently upheld orders and rules restricting attorneys from post-verdict contact with jurors absent a showing of good cause, despite the limited attorney First Amendment interests at stake. However, where there is a showing of good cause, suggesting that juror misconduct occurred, questioning the jury may lead to admissible evidence even where the jurors themselves may not testify.

Determinations of whether or not to allow discovery pursuant to proceedings for post-conviction relief is entrusted to the sound discretion of the trial court, absent a showing that the failure to allow such discovery shall result in prejudice to an appellant's substantial rights. *Baldwin*, 145 Idaho at 157, 177 P.3d at 371. As noted above, in determining whether a district court has abused its discretion this Court will consider whether "(1) the court correctly perceived the issue as one of discretion; (2) the court acted within the boundaries of such discretion and

10

consistently with legal standards applicable to specific choices; and (3) the court reached its decision by an exercise of reason." *Henderson*, 148 Idaho at 639–40, 227 P.3d at 569–70 (quotation omitted).

It is clear from the record that the district court recognized the issue of post-verdict juror contact as one of discretion. The exhaustive analysis the district court gave to each point of inquiry proposed by Hall in the memorandum accompanying his motion, clearly demonstrates that the district court reached its decision through an exercise of reason. The court found that no evidence had been submitted to suggest that: (1) extraneous prejudicial information was improperly brought to the jury's attention; (2) an outside influence was improperly brought to bear upon any juror; or (3) the jury determined any issue by resort to chance. Thus finding no evidence to suggest that juror contacts would lead to admissible testimony or affidavits under I.R.E. 606(b), the district court denied Hall's motion.

The goal in limiting contact with the jury is not to unduly restrict the discovery of evidence suggesting juror misconduct, but rather to protect jurors from unwanted contact and potential harassment. A court must, therefore, balance its legitimate goal of juror protection with the court's primary duty of ensuring that justice is done and that defendants receive fair trials. In stating that it was limiting its consideration of Hall's proposed post-verdict contact with the jurors to those matters for which juror testimony would be admissible under I.R.E. 606(b), the district court erred. The appropriate test is whether Hall had shown that there was good cause to believe that juror misconduct had occurred. If such a showing was made the court should have permitted juror contact, limited to the subject of such misconduct, irrespective of whether that contact would lead to admissible juror testimony. Such juror contact would be for the limited purpose of discovery of admissible evidence relating to juror misconduct. Such evidence could take the form of juror testimony permitted under I.R.E. 606(b), or extrinsic evidence. If the district court had solely relied upon its erroneous finding that I.R.E. 606(b) limited the scope of any post-verdict juror interviews to those topics for which the jurors themselves could testify, it would have abused its discretion. However, the court provided alternate grounds upon which it denied each area of requested inquiry, consistent with the appropriate test.

Although the district court erred in finding that I.R.E. 606(b) restricted the permissible scope of post-conviction juror interviews to those topics on which jurors themselves might testify, it was correct in finding that lines of inquiry related to the jurors' deliberations, mental

11

processes, minds or emotions were improper. Idaho Rule of Evidence 606(b) expressly prohibits jurors from testifying as to these topics, and also bars any other party from offering evidence of any statement by a juror concerning these topics. As juror statements are the only way to ascertain what took place in the deliberative process or in the minds of the jury, the effect of this rule is to make lines of inquiry pertaining to these areas inherently fruitless. Where such questioning could never lead to admissible evidence there is necessarily no showing of good cause to interview the jurors on these topics. Thus, we find that the district court properly barred areas of inquiry relating to the jurors' deliberations, mental processes, minds or emotions, on the basis that I.R.E. 606(b) would bar any discovered evidence.

In Hall's Memorandum in Support of Motion for Juror Contact, he identified the areas that he intended to question the jurors about, divided into "General Inquiries" and "Inquiries Specific to Certain Jurors." Most of the areas of specific inquiry pertained to information that should have been obtained at *voir dire*, and Hall has made no allegation that the jurors were untruthful when answering questions during that process. Rather, Hall is seeking a second chance to investigate areas that he believes trial counsel failed to properly explore. Absent some reason to believe that the jurors were untruthful in *voir dire*, the district court found that Hall was seeking to engage in a "fishing expedition" with nothing to suggest that anything improper occurred. Although the district court did not employ the terminology "good cause" in reaching its decision, it is clear that the district court found that Hall had not demonstrated good cause to inquire into these areas.

Reading the transcript of the hearing on post-verdict juror contacts, it is clear that the district court provided alternate bases for rejecting most of the proposed inquires that Hall wished to make, relying on I.R.E. 606(b) only where it was appropriate to do so under a proper reading of that rule. The transcript shows that, although employing different terminology, the district court found that Hall had failed to show good cause for any of the proposed questioning. The court specifically noted that it found "that the claims made by the petitioner relating to possible jury misconduct are made without factual support. The petitioner makes *no effort to support his claims with any objective or observable conduct*." The thorough and specific analysis the district court applies to the majority of both the general inquiries and specific inquiries proposed by Hall reveals that the district court properly considered whether Hall had made a showing of good cause.

For example, one of the areas of general inquiry that Hall proposed to interview the jurors about was their "awareness of Mr. Hall's shackles". The district court noted that Hall was not wearing shackles at trial, rather he was wearing a leg brace under his clothing that would lock when he stood up, requiring that he push a button in order to be able to bend his legs and sit back down. The court stated that since Hall never stood up during the course of the trial there was no opportunity for the jurors to notice such a restraint.

Similarly, as for Hall's general inquiry into "Juror bias regarding Mr. Hall's dangerousness", the district court found that the only support argued for this ground arose from a factually incorrect premise. One day at trial Mr. Hall's counsel was fiddling with a large paperclip. Hall alleges that one of the jurors sent the judge a note to ask the defense to dispose of the "sharp object", and that such contact suggests that the juror may have thought Hall was dangerous and did not want a sharp object in his vicinity. However, the court noted that what had actually occurred was that a juror verbally mentioned to the bailiff that counsel's manipulations of the paperclip were distracting, and then the bailiff wrote a note to this effect to the court.

Having found that no good cause existed to allow Hall to question the jurors, the district court did not abuse its discretion in denying such contacts.

**D. The district court did not abuse its discretion in denying Hall's motion to depose his trial counsel's investigator.**

The district court, in its discretion, permitted Hall to depose the two attorneys who had represented him at trial, while denying leave to depose the investigator employed by those attorneys, Glenn Elam. Hall argues that this denial constituted an abuse of discretion as he had demonstrated that the deposition was necessary in order to protect his substantial rights. Hall alternatively argues that the court abused its discretion by misapplying relevant facts and law.

It is clear that the district court recognized that its determination of whether or not to order the deposition of Elam, as a part of post-conviction discovery, was a matter of discretion. It is likewise clear from the record both in the hearing transcripts and order that the district court reached its decision through an exercise of reason. The sole remaining question is whether the district court acted within the outer bounds of its discretion, or in other words, whether Hall's requested discovery was necessary in order to protect his substantial rights.

The post-conviction claim Hall was seeking to support was a *Strickland*[2] claim of ineffective assistance of counsel, based upon a failure to fully investigate and present evidence on a theory of an alternate perpetrator. The Court authorized the deposition of both of the attorneys who had represented Hall at trial, in order to obtain information relevant to that claim. It is also evident from the record that Elam fully participated with Hall's appellate counsel's investigation, talking on numerous occasions with their investigator. Hall's sole ground for seeking to depose Elam appears to be that Elam would not sign an affidavit that had been prepared for him by Hall's counsel.

As a claim of ineffective assistance of counsel for failure to properly investigate and submit evidence on a theory of an alternate perpetrator may best be made by demonstrating what investigation trial counsel authorized, what the result of that investigation was, and how that information was used, the deposition of trial counsel was the most direct and material evidence to that claim. As the district court noted, Elam was "not a decision-maker on what evidence was introduced, or known or not known, known about and not introduced." Further, the record shows that Elam cooperated fully with Hall's attorneys' investigation into this issue, and the trial court recognized that an affidavit prepared by the appellate investigator might be an alternative means of submitting evidence on the issue. Due to the discovery that was granted and the alternative means Hall had available to gather and submit evidence on the relevant post-conviction claim, we find that the district court's denial of the requested deposition did not prejudice Hall's substantial rights and was within the outer bounds of the district court's discretion.

Hall also argues that heightened procedural safeguards should be employed at discovery in capital cases, but he cites to no Idaho authority supporting that proposition, instead citing to law pertaining to discovery during federal habeas corpus actions. *See Payne v. Bell*, 89 F.Supp.2d 967 (W.D. Tenn. 2000). This Court has previously applied standard post-conviction discovery standards in capital proceedings. *See Fields v. State*, 135 Idaho 286, 291, 17 P.3d 230, 235 (2000). *See also State v. Porter*, 130 Idaho 772, 782, 948 P.2d 127, 137 (1997) (expressly declining to adopt ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases (2003)). Hall has presented nothing that persuades this Court that post-conviction discovery standards should be different for capital cases.

---

[2] *Strickland v. Washington*, 466 U.S. 668 (1984).

## V. CONCLUSION

We hold that the district court had the inherent authority to enter an order barring contact with the jurors absent prior court approval. The district court's order did not violate Hall's attorneys' First Amendment rights. The district court did not abuse its discretion in denying Hall's request to contact jurors, as Hall failed to demonstrate good cause to believe that those contacts would lead to admissible evidence of juror misconduct. Nor did the district court abuse its discretion in denying Hall's request to depose his trial counsel's investigator, as that denial was a proper exercise of discretion and did not prejudice his substantial rights. We affirm the district court's decision on all issues.

Chief Justice EISMANN and Justices J. JONES, W. JONES and HORTON, **CONCUR.**