## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 51876

| | |
|---|---|
| STATE OF IDAHO,<br><br>    Plaintiff-Respondent,<br><br>v.<br><br>TOMAS DANIEL GARCIA-ONGAY,<br><br>    Defendant-Appellant. | )<br>)  **Filed:  January 5, 2026**<br>)<br>)  **Melanie Gagnepain, Clerk**<br>)<br>)  **THIS IS AN UNPUBLISHED**<br>)  **OPINION AND SHALL NOT**<br>)  **BE CITED AS AUTHORITY**<br>)<br>) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Elmore County.  Hon. Theodore Fleming, District Judge.

Order denying motion for new trial, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

---

MELANSON, Judge Pro Tem

Tomas Daniel Garcia-Ongay appeals from an order of the district court denying his motion for new trial.  We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Garcia-Ongay was found guilty by a jury of lewd conduct with a minor under the age of sixteen.  I.C. § 18-1508.  On the day after the trial, the Elmore County Jury Commissioner sent an email to the district court as follows:

1

This morning I realized there may be an issue regarding one of the impaneled jurors on the Garcia-Ongay trial, [Juror #9].[1] A while back when he received his summons he contacted me saying that he was a convicted felon. As it turns out, he was successfully discharged from probation without any issues, and therefore a qualified juror in Idaho. Needless to say that was not what he wanted to hear, and he responded to the effect of "I hope I get put on a trial with a Mexican so I can find them guilty, and I hope that Trump builds that wall."

I often get jurors that say things similar to this, and I generally just assume that they're trying to get out of jury duty and I doubt they genuinely feel this way. However, the fact that the defendant was Hispanic and he was found guilty is concerning. Additionally, I didn't listen to the entirety of voir dire, and don't know for certain whether or not he mentioned his conviction. I thought I should bring this to your attention.

Citing *Peña-Rodriguez v. Colorado*, 580 U.S. 206 (2017),[2] Garcia-Ongay moved for a new trial and requested that the district court grant permission for him to investigate, by interviewing the jurors, whether racial animus tainted the jury's deliberations.

The district court denied the motion and Garcia-Ongay appealed. *See State v. Garcia-Ongay*, 169 Idaho 1, 490 P.3d 1 (2021). The question presented by this initial appeal was whether I.R.E. 606(b) proscribes contacting jurors after the verdict to obtain evidence of potential racial animus in the jury's deliberations. The Court, holding that good cause existed to suggest that racial animus might have tainted the jury's deliberations, reversed and remanded. *Garcia-Ongay*, 169 Idaho at 9, 490 P.3d at 9. Specifically, the case was remanded "to allow Garcia-Ongay to interview Juror #9 and, in the discretion of the district court, contact the other jurors to investigate whether racial prejudice infected their deliberations." *Id.*

On remand, an investigator retained by Garcia-Ongay interviewed Juror #9 and submitted an affidavit which was filed with the district court. The affidavit disclosed that Juror #9 stated that

---

[1]     "Although the Jury Commissioner identified the juror as juror number five" in the email, "we refer to the juror by the number assigned during voir dire." *State v. Garcia-Ongay*, 169 Idaho 1, 4, 490 P.3d 1, 4 (2021).

[2]     In *Peña-Rodriguez,* the United States Supreme Court recognized an exception to the "no-impeachment rule" which traditionally prevented a trial court from considering post-verdict juror affidavits alleging that another juror made racist statements during deliberations. *Peña-Rodriguez,* 580 U.S. at 225. The exception, rooted in the Sixth and Fourteenth Amendments to the United States Constitution, allows a trial court to consider post-verdict evidence of racial animus in jury deliberations. *See id.*

he was the sole provider for his family and that he did not want to sit on a jury. Juror #9 thought that, because he was a convicted felon, he would not be allowed to sit on a jury but that the jury commissioner told Juror #9 he was still eligible. Juror #9 did not recall the racial remark to the jury commissioner but agreed Juror #9 probably did say it to get off the jury. Juror #9 also stated that the verdict was based only on the evidence the jurors heard during the trial. Juror #9 volunteered that he was sexually assaulted as a young boy but that he did not inform the district court about this and had only recently told his wife. The investigator's interview with Juror #9 was recorded and admitted into evidence. The interview was consistent with the investigator's affidavit.

Garcia-Ongay requested an expansion of the jury investigation by interviewing other jurors on the grounds that Juror #9 did not disclose his past sexual abuse during voir dire, despite the question being specifically asked, and sought a decision on his motion for a new trial. The district court denied Garcia-Ongay's request for expansion and denied his motion for a new trial. Garcia-Ongay appeals.

## II.

## STANDARD OF REVIEW

When considering alleged violations of constitutional rights, the appellate court defers to the trial court's findings of fact unless clearly erroneous but exercises free review over the trial court's determination as to whether constitutional requirements have been satisfied in light of the facts found. *Hall v. State*, 151 Idaho 42, 45, 253 P.3d 716, 719 (2011). A trial court's decisions on a motion to permit post-verdict discovery of jurors and on a motion for new trial are reviewed under an abuse of discretion standard. *Garcia-Ongay*, 169 Idaho at 5, 490 P.3d at 5; *State v. Egersdorf*, 126 Idaho 684, 687, 889 P.2d 118, 121 (Ct. App. 1995). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

# III.

# ANALYSIS

## A.     Expansion of Jury Investigation

We first address Garcia-Ongay's request to permit additional post-verdict discovery of jurors.  The Idaho Supreme Court approached the issue in Garcia-Ongay's case mindful of the unmistakable principle that discrimination on the basis of race, odious in all aspects, is especially pernicious in the administration of justice.  *Peña-Rodriguez*, 580 U.S. at 223; *Garcia-Ongay*, 169 Idaho at 7, 490 P.3d at 7.  The Court concluded that a defendant must demonstrate by a preponderance of the evidence good cause to believe that juror misconduct occurred in order to conduct a post-verdict investigation by contacting jurors.  *Garcia-Ongay*, 169 Idaho at 8, 490 P.3d at 8; *see Hall*, 151 Idaho at 45, 253 P.3d at 719.  The Court then held that Garcia-Ongay should be allowed to conduct an investigation as follows:

> First, we hold that Garcia-Ongay may interview Juror #9 to determine if he relied on racial stereotypes or animus in reaching his guilty vote.  Next, following that interview, we hold that it is within the sound discretion of the district court to determine how and if Garcia-Ongay may contact other jurors in the case to investigate whether potential racial animus was present during their deliberations.  In setting the scope of this investigation, the district court must "balance its legitimate goal of juror protection with the court's primary duty of ensuring that justice is done and that defendants receive fair trials."  *Hall*, 151 Idaho at 51, 253 P.3d at 725.  If this investigation yields evidence of racial animus in the jury's deliberations, and Garcia-Ongay renews his motion for a new trial, the district court may then properly apply [I.R.E.]  606(b) and *Peña-Rodriguez* to decide if the evidence may be factored into its determination of whether a new trial should be ordered based on juror misconduct.

*Garcia-Ongay*, 169 Idaho at 9, 490 P.3d at 9.

On remand, Juror #9 was interviewed by an investigator for Garcia-Ongay.  The district court considered the recorded interview and found:

> In listening to the recorded interview in its entirety, it is apparent that Juror #9 did not reach his guilty vote based upon racial stereotypes or animus.  He indicated that he and the rest of the jurors reached their verdict by relying on the evidence that was presented to them during the trial, and that there were lengthy deliberations.  Moreover, Juror #9 could not really recall making the statement, although he said that "he probably did" since he was trying to get out of jury service.  This admission correlates with the jury commissioner's testimony at the original hearing in this matter that people often make comments when they are informed that they are not being excused from jury service.  Here, Juror #9's unsworn

4

statements were made over one month prior to *voir dire*, and only after Juror #9 had tried to get out of jury service because he thought he was disqualified as he had a prior felony conviction. In his interview, he reiterated again that he was surprised that he was even eligible for jury service, and that he only made the comments because he was moving, and was trying to get out of jury service.

Accordingly, although there was good cause to initiate post-trial juror contact with Juror #9 based upon the credible statements made to the jury commissioner, based upon the recorded interview, the Court determines that Juror #9's guilty vote was not based upon racial stereotypes or animus. In the Court's discretion, since the investigation did not yield evidence [of] racial animus in the jury's deliberations, or that Juror #9 prejudged the case or found [Garcia-Ongay] guilty based upon racial animus, the Court denies the request to further expand the investigation to other jurors to inquire if race entered into the deliberations. The Court reaches this decision after balancing the "legitimate goal of juror protection with the court's primary duty of ensuring that justice is done and that defendants receive fair trials." *Hall*, 151 Idaho at 51, 253 P.3d at 725.

"Mindful of the district court's factual findings, and the interview with Juror #9," Garcia-Ongay argues that the district court abused its discretion because there was good cause to expand the investigation to other jurors "to confirm whether Juror #9's racial animus did not affect the deliberations." We defer to the trial court's findings of fact if supported by substantial and competent evidence. Here, the district court recognized the issue as one of discretion, acted within the boundaries of such discretion consistently with the legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason. Once the district court determined that the investigation did not yield evidence of racial animus in the jury's deliberations, prejudice toward the case from Juror #9 or that Garcia-Ongay was found to be guilty based upon racial animus, good cause no longer existed to believe misconduct occurred. Garcia-Ongay has not shown that the district court abused its discretion by denying his request to expand the jury investigation based upon racial animus.

Garcia-Ongay also argues that the district court abused its discretion by refusing to expand the post-verdict jury investigation because of the previously undisclosed sexual abuse of Juror #9. As is the case with alleged racial animus, a defendant must demonstrate by a preponderance of the evidence good cause to believe that misconduct occurred in order to conduct a post-verdict jury investigation. *Garcia-Ongay*, 169 Idaho at 7, 490 P.3d at 7; *Hall*, 151 Idaho at 48, 253 P.3d at 722. The district court found:

5

During his interview, Juror #9 spontaneously told the investigator that he did not disclose [the prior sexual abuse] to anyone, but that he recently told his wife about it. The logical implication from his statement is that he did not discuss it with any other juror during the deliberations, either. Additionally, Juror #9 stated that he based his guilty vote on the evidence presented during the trial, and not on any outside influences. Although there would be good cause to interview Juror #9 about this statement if it had come to light earlier, and whether or not it influenced his decision, that interview has already occurred and Juror #9 has revealed that it did not. From the context of Juror #9's statements to the investigator, it is clear that he did not disclose his experience to anyone and that the fact that he was a past victim of sexual abuse did not enter into the deliberations at all. The trial in this case happened over seven years ago, and the Court determines that there is nothing presented that would warrant expanding the jury investigation at this point to question other jurors based upon Juror #9's undisclosed statement.

In reaching its conclusion, the district court "weighed the common fairness and the need for absolute privacy that must be preserved for jurors to engage in full and free debate." The district court determined that expanding the investigation "based on mere conjecture" would have been an "unsupported and prohibited scrutiny" of the jury's deliberation.

"Mindful of the district court's factual findings and the interview with Juror #9," Garcia-Ongay argues that the district court abused its discretion by denying his request to expand the investigation because he established good cause to do so. However, the record does not support a finding of good cause to believe that misconduct occurred because of Juror #9's post-verdict disclosure of his sexual abuse as a child. Garcia-Ongay has failed to show that the district court abused its discretion based upon Juror #9's nondisclosure of prior sexual abuse.

## B.     Motion for New Trial

When requesting a new trial based on evidence of juror misconduct, a defendant must prove "by clear and convincing evidence that racial prejudice tainted jury deliberations and that such misconduct 'reasonably could have prejudiced the defendant.'" *Garcia-Ongay*, 169 Idaho at 8, 490 P.3d at 8 (quoting *State v. Seiber*, 117 Idaho 637, 640, 791 P.2d 18, 21 (Ct. App. 1989)); *see State v. Rodriguez*, 173 Idaho 561, 568, 545 P.3d 1, 8 (2024). "Mindful of the district court's factual findings, and the interview with Juror #9," Garcia-Ongay argues that the district court abused its discretion in denying his motion for a new trial. The district court found that Garcia-Ongay failed to produce clear and convincing evidence that racial prejudice tainted jury deliberations and that such misconduct "reasonably could have prejudiced" him to support his

motion for a new trial. Specifically, the district court found that the post-trial interview with Juror #9 did not produce evidence that he reached his guilty vote based upon racial animus and that he barely remembered making the statement. Furthermore, the district court found that the "unsworn statements by Juror #9 from months before the trial do not satisfy the requisite standard or rise to the level of clear and convincing evidence of juror misconduct in this case that would warrant a new trial, especially after listening to the post-trial interview in its entirety."

Where a trial court denies a motion for a new trial after conducting an evidentiary hearing we defer to the court's findings of fact. *State v. Strange*, 147 Idaho 686, 689, 214 P.3d 672, 675 (2009). Here, the findings of the district court are supported by substantial evidence. To the extent that Juror #9's pre-trial comments to the jury commissioner raised an inference that the verdict was tainted by racial animus, that inference was dispelled by the post-trial interview. Absent clear and convincing evidence that racial prejudice tainted the jury's verdict, the district court correctly denied Garcia-Ongay's motion for new trial.

## IV.
## CONCLUSION

Garcia-Ongay has failed to show that the district court abused its discretion in denying his request to expand the post-verdict jury investigation and denying his motion for a new trial. Accordingly, the order of the district court denying Garcia-Ongay's motion for new trial is affirmed.

Chief Judge TRIBE and Judge GRATTON, **CONCUR**.

7