# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 38871

<table>
<tr><td>

STATE OF IDAHO,

      Plaintiff-Respondent,

v.

JOSHUA MICHAEL MOSES,

      Defendant-Appellant.
</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)
</td><td>

**2013 Opinion No. 25**

**Filed: May 3, 2013**

**Stephen W. Kenyon, Clerk**
</td></tr>
</table>

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

Judgment of conviction for grand theft, <u>vacated</u> and <u>case remanded</u>.

Sara B. Thomas, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for appellant. Sarah E. Tompkins argued.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent. Jessica M. Lorello argued.

_____

LANSING, Judge

Joshua Michael Moses appeals from his conviction for grand theft by extortion. Moses asserts that the district court erred by denying his mid-trial request to question a juror after the juror informed the court that he was suffering from anxiety and might be unable to continue his participation on the jury. We conclude that the district court erred by denying the request, and because we cannot say that the error was harmless, the conviction must be reversed. For guidance on remand, we also address other claims of trial error, including alleged errors in evidentiary rulings and alleged instances of prosecutorial misconduct during closing argument.

## I.

## BACKGROUND

According to the State's evidence presented at trial, on July 24, 2010, Walter Ward received a telephone call from his brother-in-law, Joshua Branam. Branam told Ward that he needed $2,500 or Branam would be killed. A third person then took Branam's telephone and

told Ward that "it wasn't a joke, it wasn't some Hollywood bullshit, he wasn't messing around, and not to go to the police." The third person told Ward to meet him at a local department store parking lot with the money.

Ward, accompanied by a friend, gathered the money and went to the specified location where the two were met by the defendant, Joshua Moses. Ward recognized Moses' voice as that of the third party he had spoken to earlier on the phone. Ward showed Moses the money and asked him where Branam was. Moses told Ward he would take him to Branam's location, and Ward gave Moses the money. Moses got into Ward's car and the three men drove off. Along the way, Moses said that the money was for drugs that Moses' uncle had fronted to Branam, but that Branam had not paid for. Moses directed Ward to drive to the entrance of a trailer park. Moses walked away, and shortly thereafter, Branam walked up to Ward's vehicle. Branam's face was bloody and beaten and, according to Ward's friend, he looked "very shaken and scared."

After dropping off his brother-in-law, Ward went to the police. Moses was arrested and was initially charged with kidnapping and robbery of Branam (who apparently had produced $1,500 from his pocket and given it to Moses after being beaten), but the State was unable to establish probable cause at a preliminary hearing because Branam invoked the Fifth Amendment and would not testify. After a number of additional prosecutorial false starts, the State eventually charged Moses with grand theft by extortion, Idaho Code §§ 18-2403(2)(e); 18-2407(1)(a); 19-2514, naming Ward as the victim. At the preliminary hearing, the State presented Ward's testimony. Branam testified under a written grant of immunity, but as a witness for the defense rather than the prosecution. He testified that he had concocted a scheme to extort money from Ward and that Moses had nothing to do with it, save for being an unwitting dupe sent by Branam to pick up money from Ward. On cross-examination, the prosecutor impeached Branam with his prior statements to police accusing Moses of the extortion. The prosecutor also inquired whether Branam was afraid of Moses, implying that fear may have caused Branam to change his story. The magistrate found probable cause and bound Moses over to district court.

At trial, the State relied principally upon the testimony of Ward and the friend who accompanied him to pick up Moses and Branam. Branam did not testify in person at Moses' trial because he again invoked the Fifth Amendment and refused to testify. The defense then obtained admission of Branam's preliminary hearing testimony under Idaho Rule of

2

Evidence 801(d)(2)(A) as sworn testimony of an unavailable witness, and Branam's previous testimony was read into the record.

The jury returned a guilty verdict. Moses appeals from the resulting judgment of conviction, asserting several errors at trial in pretrial rulings.

## II.

## ANALYSIS

### A. The District Court Erred by Denying the Defense Request for Questioning of the Juror

On the morning of the second day of trial, the district court informed the parties of a note from the bailiff stating that juror B.W. was "having anxiety issues and is not sure he can continue."[1] The court later said that that B.W. "has anxiety issues and is having some difficulty with the back and forth and the contentious nature of the proceedings." Defense counsel responded:

> I would like to have a little more information on the juror that suffers with the anxiety to make sure that that's not something that is gonna prevent him from listening to every bit of the testimony. My concern is if he's under an anxiety attack in the courtroom, he may not be hearing the testimony, and I want to--I don't know how to have the Court make sure that his anxiety is not gonna impact his ability to take in the testimony as it comes in.

The district court asked the State to respond, and the prosecutor said:

> This juror was passed by myself as well as counsel, and no one delved into these potential issues, probably because we didn't know about them, but he didn't bring them up. He's not said anything to make anyone aware that he can't be fair and impartial in this case. I think to single him out and to question is gonna make a potential problem even worse, and basically we're worrying about something that we don't know if it happened or not, and I don't think we need to take a juror out and single him out and start asking him questions.

The district court, apparently convinced by the State's argument, ruled:

> Well, I am going to simply announce to the entire panel that if anybody feels at any time that they do need a break, to please bring that to the Court's attention, but otherwise, I'm not going to inquire further of [B.W.].

---

[1] The district court stated that the bailiff had delivered a note about another juror issue and continued that "B.W. informed me that he's having anxiety issues and is not sure he can continue." The note was not preserved for the record as a court exhibit. We assume that the district court was reading from the note and, therefore, that "me" referred to the bailiff.

3

The issue did not again arise at the trial. The jury, including juror B.W. as a member, returned a guilty verdict.

On appeal, Moses asserts that the district court committed reversible error by denying his request that B.W. be questioned regarding his mental condition and its effect on his ability to perform his role as a juror.[2] For the following reasons, we conclude that error occurred and that it necessitates vacating the conviction.

---

[2]    The dissent appears to question whether Moses preserved this issue for review by adequately requesting that the juror be questioned. We do not share that doubt. Defense counsel expressed a need for "more information" on the juror's condition to ensure that it was "not something that is going to prevent him from listening to every bit of the testimony," and a need "to have the court make sure that his anxiety is not going to impact his ability to take in the testimony as it comes in." The prosecutor's response shows that he understood this statement to be a request for questioning of the juror, and the court so understood it as well, responding that "I'm not going to inquire further of [B.W.]." The State's brief on appeal likewise recognizes that Moses made a "request to inquire of the juror."

Contrary to the dissent's implication, our decision in *State v. Bolen*, 143 Idaho 437, 146 P.3d 703 (Ct. App. 2006) does not indicate that Moses was required to take an "exception" to the trial court's ruling after the trial court refused his request for an inquiry into the juror's condition. In *Bolen*, we held that the defendant did not timely raise the question of juror misconduct (sleeping during the trial) because the defendant did not bring the problem to the court's attention during the trial but, rather, waited to raise it in a post-trial motion. We pointed out that if the trial court had been informed of this alleged misconduct, it could have conducted an inquiry and, if it concluded that juror inattention had actually occurred, could have taken remedial steps such as admonishment of an inattentive juror, replacement of the juror with an alternate, or declaration of a mistrial, and in that event, "the matter would [have been] preserved for appellate review *to the extent that the defendant takes exception to the trial court's chosen course of action*." In context, those italicized words from *Bolen* refer to the defendant's ability to challenge on appeal the remedial action, or lack thereof, that might be chosen by the trial court after an inquiry into the alleged juror misconduct. It does not suggest that when a defendant has made a request for inquiry of a juror's fitness or conduct during trial and the trial court has refused to allow such an inquiry, the defendant must then restate his request by taking "exception" to the court's refusal. In the present case, the issue was framed below and preserved for appeal.

The dissent also sees a significant distinction between Moses' terminology in his opening brief asserting that the court erred in refusing to permit Moses to inquire of the juror and the terminology in his reply brief that the trial court had a duty to inquire into the juror's fitness. We do not find these variations in Moses' articulation of his argument to be significant. The substantive issue raised in Moses' opening brief was whether his constitutional right to a trial by competent, qualified jurors was denied when the trial court foreclosed *any* inquiry into the juror's fitness to perform his duties. The form that such an inquiry should have taken is not the issue presented and was not a focus of the parties' arguments below or on appeal. The question presented is whether an inquiry should have been allowed at all.

4

The United States Supreme Court has long recognized that "[d]ue process implies a tribunal both impartial and mentally competent to afford a hearing." *Jordan v. Com. of Massachusetts*, 225 U.S. 167, 176 (1912). *See also Peters v. Kiff*, 407 U.S. 493, 501 (1972) (per curiam). The Court observed, "The due process right to a competent and impartial tribunal is quite separate from the right to any particular form of proceeding," and "[l]ong before this Court held that the Constitution imposes the requirement of jury trial on the States, it was well established that the Due Process Clause protects a defendant from jurors who are actually incapable of rendering an impartial verdict, based on the evidence and the law." In addition to the due process implication, the Supreme Court has recognized that a defendant has a Sixth Amendment right to an "unimpaired jury." *Tanner v. United States*, 483 U.S. 107, 127 (1987) (jurors were drinking and ingesting illegal drugs at lunch breaks during trial). *See also State v. DeGrat*, 128 Idaho 352, 355, 913 P.2d 568, 571 (1996). Thus, removal for cause is proper when a venireperson is unable or unwilling to perform the duties of a juror in accordance with the court's instructions and the jurors' oath. *See generally Wainwright v. Witt*, 469 U.S. 412, 424 (1985). This is true not only when the source of the juror's unfitness is bias or prejudice, but also when it is mental or emotional inability to properly perform a juror's function. *See Tanner*, 483 U.S. at 127 (jurors impaired by alcohol and drug use); *State v. DaSilva*, 742 A.2d 721, 725 (R.I. 1999) (juror's distress at having just learned that her grandchild had been molested); *Toles v. State*, 947 P.2d 180, 185 (Okla. Crim. App. 1997) (juror said she could not pay attention to the trial because her husband had left her the day before and she had lost her job two weeks earlier).

This right to due process also encompasses the opportunity to question jurors in order to disclose grounds for removal for cause. Initially, at least, this inquiry takes place during voir dire at the jury selection phase of the trial. The United States Supreme Court has said:

> [P]art of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors. *Dennis v. United States*, 339 U.S. 162, 171-172, 70 S. Ct. 519, 523-524, 94 L. Ed. 734 (1950); *Morford v. United States*, 339 U.S. 258, 259, 70 S. Ct. 586, 587, 94 L. Ed. 815 (1950). "*Voir dire* plays a critical function in assuring the criminal defendant that his [constitutional] right to an impartial jury will be honored. Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." *Rosales-Lopez v. United States*, 451 U.S. 182, 188, 101 S. Ct. 1629, 1634, 68 L. Ed. 2d 22 (1981) (plurality opinion). Hence, "[t]he exercise of [the trial court's] discretion, and the restriction upon inquiries at the request of counsel,

5

> [are] subject to the essential demands of fairness." *Aldridge v. United States*, 283 U.S. 308, 310, 51 S. Ct. 470, 471-472, 75 L. Ed. 1054 (1931).

*Morgan v. Illinois*, 504 U.S. 719, 729-30 (1992). Similarly, in *United States v. Alexander*, 2 Idaho 354, 360, 17 P. 746, 749 (1888), a case dating back to this state's territorial days, the Idaho Supreme Court reversed a conviction where the trial court prohibited the defense from questioning a potential juror for bias. The Court held that "[t]he right given to challenge for cause carries with it the right to examine for cause, or have the court do so. While the court should control the examination, and may restrict it to the statutory grounds, yet the right of a party to know whether a juror is qualified and competent is a substantial right that cannot, under our law, be denied." *Id.*

Sometimes, questions regarding a juror's ability to hear the evidence, deliberate impartially, and follow the court's instructions do not arise until the trial is underway. When possible grounds for juror disqualification are brought to the trial court's attention mid-trial, the ordinary procedure is to bring the juror before the court for questioning on the matter, so that factual findings and legal determinations can be made. "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). As an example, in *State v. Tolman*, 121 Idaho 899, 900-01, 828 P.2d 1304, 1305-06 (1992), *overruled on other grounds by State v. Grist*, 147 Idaho 49, 205 P.3d 1185 (2009), the prosecutor asked during *voir dire* if any of the potential jurors knew anyone who had been molested as a child. One of the eventual jurors did not respond, but on the second day of trial the juror advised the court that his wife had been abused. The juror was brought in and was "thoroughly questioned by the court and by counsel concerning any possible effect that his wife's molestation would have on his consideration of the case. [The juror] repeatedly stated that he would be fair and did not think his wife's molestation would affect his judgment in any way. The trial court concluded that [the juror] was not prejudiced and remained qualified to serve as a juror." *Id.* at 902, 828 P.2d at 1307. Our Supreme Court found no trial court error. *Id.* *See also DaSilva*, 742 A.2d at 725 (holding that when questions concerning a sitting juror's fitness are raised, the judge must conduct a sufficient inquiry to make a reasoned determination whether the juror should be discharged or may continue to serve).

6

There are practical reasons to encourage timely trial inquiry of a juror who discloses possible grounds for his removal. First, "[i]f the trial court resolves any doubt on the side of disqualification, the worst the court will have done in most cases is to have replaced one impartial juror with another impartial juror, whereas resolving doubt in favor of retaining the juror can result in the deprivation of a fair trial." *State v. Hauser*, 143 Idaho 603, 610, 150 P.3d 296, 303 (Ct. App. 2006) (internal quotation marks and citations omitted).

Second, if a defendant waits to raise the issue on a post-trial motion, relief may be unavailable. Courts disfavor relief based on "[a]llegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, [which] seriously disrupt the finality of the process." *Tanner*, 483 U.S. at 120. For example, in *United States v. Hall*, 989 F.2d 711, 714 (4th Cir. 1993), in post-trial hearings the defendant "produced evidence that Juror X had been involuntarily committed nine times; had been diagnosed as schizophrenic by thirteen different psychiatrists and by the Virginia Department of Mental Health and Mental Retardation; had experienced episodes of extremely violent behavior, including attempts to kill his family members; had a history of refusing medication, and had been certified as disabled ('unable to engage in any substantial gainful activity') by his present treating physician." Nonetheless, the trial court made a factual finding that Hall had failed to show that the juror was incompetent during the trial itself and denied relief on this basis, and the Circuit Court affirmed. *Id.* This Court has also refused relief based on post-trial allegations of juror disqualification. In *State v. Bolen*, 143 Idaho 437, 440-41, 146 P.3d 703, 706-07 (Ct. App. 2006), we held that the defendant could not raise a post-verdict claim that jurors were sleeping or inattentive during his trial because he did not bring this matter to the trial court's attention at the time he observed the juror misconduct. We stated:

> Had the trial court been informed of the jurors' alleged misconduct as set forth in their affidavits, it could have, in its discretion, conducted an inquiry of individual jurors to determine whether they were in fact inattentive and/or had been sleeping during the trial and could have made a contemporaneous record of its own observations on the matter. If a trial court concludes that juror inattention had actually occurred, and if relief is requested, the court can take remedial steps including admonishment of any inattentive juror, replacement of a juror with an alternate or, in appropriate circumstances, declaration of a mistrial. In addition, and of immediate impact to the instant appeal, the matter would be preserved for appellate review to the extent that the defendant takes exception to the trial court's chosen course of action. In accord with Idaho law and that of other jurisdictions, because the defense chose not to bring their observations of alleged

7

inattentive jurors to the trial court's attention until ten days after the trial concluded, the district court did not err in denying relief pursuant to the motion for a new trial . . . .

*Id.* at 441, 146 P.3d at 707 (footnotes omitted).

Here, absent an opportunity to question juror B.W., Moses had no access to the information sought because the defense could not speak to the juror during the trial and the ability to present post-verdict evidence from or about a juror's mental state is severely restricted by Idaho Rule of Evidence 606(b). That rule specifies that upon an inquiry into the validity of a verdict or indictment, a juror may not testify in person or by affidavit, nor may evidence of any statement by the juror be introduced, concerning "anything upon the juror's . . . mind or emotion as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith." In *Tanner*, addressing the scope of admissible evidence under the corresponding federal rule, the United States Supreme Court concluded that the rule barred the post-verdict presentation of juror testimony about that which was "internal" to the jury. *Tanner*, 483 U.S. at 116-27. Included within that which is internal and prohibited by the rule, the Court said, is juror testimony about alcohol and illegal drugs consumed by jurors during trial and a juror's mental incompetence. *Id.* Thus, were the United States Supreme Court's interpretation of the federal rule to be followed by the courts of this state[3] in interpreting Idaho Rule of Evidence 606(b), juror B.W. would not be allowed to testify post-verdict about the effect that his anxiety had upon his ability to take in and consider the evidence presented at trial or to participate in deliberations. Consequently, by denying Moses' request to inquire of the

---

[3]     In *Hall v. State*, 151 Idaho 42, 49-51, 253 P.3d 716, 723-25 (2011), our state Supreme Court quoted extensively from *Tanner*, but did not expressly adopt the United States Supreme Court's interpretation of the federal rule in interpreting I.R.E. 606(b). The *Hall* Court did, however, state that "we find that the district court properly barred areas of inquiry relating to the jurors' deliberations, mental processes, minds or emotions, on the basis that I.R.E. 606(b) would bar any discovered evidence." *Id.* at 51, 253 P.3d at 725. This statement is consistent with the majority opinion in *Tanner*. The *Hall* Court also said, however, that I.R.E. 606(b) "'does not have application to information brought forth which challenges other conduct of jurors during the trial, apart from their deliberations.'" *Id.* at 49, 253 P.3d at 723 (quoting *Levinger v. Mercy Med. Ctr., Nampa*, 139 Idaho 192, 197, 75 P.3d 1202, 1207 (2003)). This last statement is more like the reasoning of the four-Justice dissent in *Tanner*, which concluded that juror testimony that does not probe into the deliberative process, such as testimony concerning juror intoxication and mental competence, is not excluded by Federal Rule of Evidence 606(b). *See Tanner*, 483 U.S. at 134-42.

8

juror, the district court here precluded the only definite opportunity to establish a factual record upon which to seek removal of the juror for cause.

Defense counsel aptly argued below that if the juror was "under an anxiety attack in the courtroom, he may not be hearing the testimony" and that more information was needed "to make sure that that's not something that is gonna prevent him from listening to every bit of the testimony." The prosecutor's response, that "we're worrying about something that we don't know if it happened or not," illustrates precisely why the defense request for an inquiry should have been granted. Had the juror been questioned, the trial court, the parties, and this Court *would* know the nature and severity of the juror's distress. It might have been established that the juror's condition was not as serious as he preliminarily believed it to be and that it did not warrant his removal from the jury, but because the inquiry was not allowed, we cannot know whether the juror was able to competently discharge his duties.

It may be argued that whether to allow inquiry of juror B.W. in this circumstance was committed to the discretion of the trial court, for Idaho Criminal Rule 24(b) states, in part, that "[t]he voir dire examination is under the supervision of the court and subject to such limitations as the court may prescribe in the furtherance of justice and the expeditious disposition of the case." Thus, a trial court possesses authority to reasonably restrict voir dire and "placing limits beyond which the voir dire examination may not properly go is a matter which rests in the sound discretion of the trial court." *State v. Larsen*, 129 Idaho 294, 296, 923 P.2d 1001, 1003 (Ct. App. 1996) (quoting *State v. Camarillo*, 106 Idaho 310, 312, 678 P.2d 102, 104 (Ct. App. 1984)). However, a court's discretion must be exercised "within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices." *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). *See also State v. Howard*, 135 Idaho 727, 731, 24 P.3d 44, 48 (2001). In *United States v. Baldwin*, 607 F.2d 1295, 1297 (9th Cir. 1979), the Circuit Court said: "It is not an abuse of discretion for the trial judge to insist upon conducting a voir dire examination, but if he does so, he must exercise a sound judicial discretion in the acceptance or rejection of supplemental questions proposed by counsel" and "[b]y 'sound judicial discretion,' we mean that the trial judge should keep uppermost in his mind the fact that the parties have the right to some surface information about prospective jurors which might furnish the basis for an informed exercise of peremptory challenges or motions to strike for cause." We have found no authority holding that when a good faith, substantial question is raised concerning

9

a juror's capability to perform his duties or to act without bias, the court possesses discretion to deny a request for inquiry. When reviewing courts have found that a trial court prohibited a requested inquiry that was necessary for determination of a juror's fitness, they have reversed the judgment and allowed a new trial. *See Morgan*, 504 U.S. 719 (trial court's refusal in a capital case to allow in *voir dire* a question asking if any jurors would automatically vote to impose the death penalty regardless of the facts); *Aldridge v. United States*, 283 U.S. 308 (1931) (refusal to allow examination of prospective jurors as to whether they had racial prejudice which would prevent their giving an impartial verdict); *United States v. Brantley*, 733 F.2d 1429, 1439-40 (11th Cir. 1984) (holding trial court abused its discretion by preventing defense counsel from questioning jurors about an allegation of extrinsic influence and thereby denied defendants the opportunity to prove their claim); *Baldwin*, 607 F.2d at 1298 (disallowance of *voir dire* questions as to whether prospective jurors would give greater or lesser weight to the testimony of the law enforcement officer by mere reason of his/her position and whether any prospective juror was acquainted with any of the witnesses in the case); *Alexander*, 2 Idaho at 360, 17 P. at 749 (preventing defense counsel from questioning a potential juror for bias); *DaSilva*, 742 A.2d at 725-26 (saying when questions concerning a juror's fitness are raised, the court must conduct sufficient inquiry to make a reasoned determination whether the juror should be discharged or may continue to serve); *State v. Tracy*, 741 A.2d 281 (R.I. 1999) (holding that in child molestation case, juror's disclosure during deliberations that his grandchild had been sexually abused raised an issue whether the juror could be fair and impartial, and the trial court erred in refusing defense request to inquire whether the juror felt he could be impartial).[4]

We do not suggest that a request for inquiry into a juror's fitness must be granted anytime a juror expresses that he or she is stressed or when jurors evidence a normal human response to disturbing testimony or physical evidence. Indeed, jurors are commonly required to endure

---

[4] The dissent cites *Bolen*, 143 Idaho at 441, 146 P.3d at 707, for the proposition that the trial court possessed discretion here to disallow questioning of B.W. The dissent relies exclusively upon a sentence from this Court's decision where we said that if the defendant had reported to the court during trial his observation of jurors sleeping during the proceedings, the court could have, "in its discretion," conducted an inquiry of the individual jurors. That casual, and perhaps inappropriate, reference to discretion is not a holding in the case, and *Bolen* does not stand for the proposition that a trial court possesses discretion to refuse to allow inquiry when there has been brought to the court's attention sufficient reason to question whether a juror is qualified and competent to perform his function.

exposure to evidence of highly repugnant acts or conditions that would cause considerable distress to people of normal sensibilities. This is not, however, such a case.

On the record that we have, the juror believed that his anxiety was sufficiently severe that he questioned whether he would be able to continue as a juror and he felt compelled to inform the trial court of this fact. The court's response conveyed that additional breaks, if requested, would be the only relief that the juror could obtain. This may have dissuaded the juror from raising the issue again, regardless of the severity of his anxiety. In light of the constitutional rights implicated here, we hold that the district court erred by denying the defense request for further inquiry of the juror. The judgment of conviction therefore must be reversed and a new trial allowed.

The dissent is of the view that we should conduct a harmless error analysis. We disagree. We note first that the State has not argued that, if it was error, the district court's refusal to allow questioning of the juror was harmless. Further, the very nature of the error renders a harmlessness determination impossible because there is no record from which to ascertain whether the juror's emotional condition prevented him from properly performing his role. That is likely why, as noted above, reviewing courts that have found error of this character, though not using the term "structural error," have simply reversed the judgment and allowed a new trial. Accordingly, although we share the dissent's frustration that this error necessitates a new trial when the effect of the juror's anxiety on his performance as a juror is unknown, we nevertheless conclude that the judgment of conviction must be vacated.

## B.    Adoptive Admission

Moses has raised a number of additional issues that we address for guidance in the event that a new trial is conducted on remand. The first of these relates to the admission into evidence of Branam's statements made to Ward on the telephone. The State filed a motion in limine requesting a pretrial determination that Branam's telephonic statements to Ward, indicating that he needed $2,500 or would be killed, would be admissible at trial as an adoptive admission of Moses under I.R.E. 801(d)(2)(B). The State asserted that the person who then took the telephone and told Ward that it was not a joke and he was not messing around was Moses, and that Moses' telephone comments demonstrated an adoption of Branam's statements. Moses' counsel argued that the State could not lay a foundation to show adoptive admission of the statements by Moses unless Branam testified that Moses was present during the conversation, heard Branam's

statement, and was the person who thereafter took the telephone and spoke to Ward. The court held that Branam's statements would be admissible as an adoptive admission of Moses if Ward could lay a foundation by testifying that the voice he heard on the telephone was Moses' voice. That foundation was laid at trial where Ward testified that after speaking with Moses in Ward's car, he recognized Moses' voice as the third person he had spoken to earlier on the telephone. With that foundation, the court admitted Branam's telephonic statements to Ward as adoptive admissions by Moses. Moses argues that the district court's ruling on the State's pretrial motion was error.

An out-of-court statement admitted for the truth of its content is hearsay, I.R.E. 801(c), and is inadmissible absent a hearsay exception provided by the Idaho Rules of Evidence. I.R.E. 802. A party's own out-of-court statement, however, does not constitute hearsay when proffered against that party and is "a statement of which the party has manifested an adoption or belief in its truth." I.R.E. 801(d)(2)(B). There is only one reported Idaho case addressing the necessary foundation for an adoptive admission. In *State v. Nguyen*, 122 Idaho 151, 156, 832 P.2d 324, 329 (Ct. App. 1992), this Court stated:

> The party contending for adoption has the burden of proving adoption was intended. *See* G.M. BELL, HANDBOOK OF EVIDENCE FOR THE IDAHO LAWYER 264 (3d ed. 1987).
>> When a statement is offered as an adoptive admission, the primary inquiry is whether the statement was such that under the circumstances, an innocent defendant would normally be induced to respond, and whether there are sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement. [Citations omitted.]
> *United States v. Carter*, 760 F.2d 1568, 1579 (11th Cir. 1985). In the facts described herein, Thanh was present during the interview of the co-defendants and is said to have nodded his agreement to their statements. From that evidence, the court concluded that the hearsay statements of the co-defendants were adopted by Thanh thus becoming his own admissions.

This Court held that in this circumstance "[i]t was not error for the court to allow the jury to hear the tape of these statements just as they were spoken by Thanh at the time of his arrest." *Id.*

Moses does not contend on appeal that Ward's actual trial testimony was inadequate to lay a foundation for admission of Branam's statement as his adoptive admission. Moses' claims of error focus instead on the pretrial hearing where the district court held that Branam's statement would be admissible as Moses' adoptive admission if the necessary foundation were

12

laid through Ward's testimony that he recognized the voice as that of Moses. According to Moses, the court should have denied the State's motion in limine because the State did not present admissible evidence through Ward's actual testimony at the hearing on the motion.

Moses' argument is without merit. First, the court here did not make a final determination admitting the evidence based upon the State's offer of proof at the motion in limine hearing but, rather, required that the necessary foundation be laid at trial. Moses does not dispute that an adequate foundation for admission of the statement was laid at trial. Second, the premise of Moses' argument--that a proponent of evidence on a motion in limine must present the witness's actual testimony instead of making an offer of proof through representation of counsel--is erroneous. Idaho Rule of Evidence 104(a) provides that in making a preliminary determination concerning the admissibility of evidence, the court is not bound by the rules of evidence. Moses has demonstrated no error in the admission of this testimony.

## C.    The Exclusion of Moses' Surrebuttal Evidence

According to Branam's preliminary hearing testimony, which was read into the record during the defense's case-in-chief, Branam concocted the scheme to extort money from his brother-in-law, and Moses had nothing to do with it; he was just an unwitting dupe sent by Branam to pick up money from Ward. After presenting this testimony, the defense sought admission of the testimony of Christian Beech, who would testify that Branam made out-of-court statements consistent with his preliminary hearing testimony. Moses argued that Beech's testimony was admissible under the I.R.E. 804(b)(3) hearsay exception for statements against interest. The district court disallowed Beech's testimony.

On rebuttal, the State presented the testimony of Ward and a police detective in which they repeated statements Branam had made to them implicating Moses in the charged crime. This evidence of Branam's out-of-court statements was admitted as Branam's prior inconsistent statements presented for the purpose of impeaching Branam's preliminary hearing testimony that had been introduced by the defense. On surrebuttal, the defense invoked I.R.E. 801(d)(1)(B) and 806, and sought to rebut the State's express or implied charge of recent fabrication or improper influence on Branam (fear of Moses) by introducing the testimony of two witnesses, Beech and Ed Yankey, who would testify that Branam made out-of-court statements that were consistent with his preliminary hearing testimony. The court allowed Beech's testimony, reasoning that it would give the defense the "benefit of the doubt" that the court should have allowed his

13

testimony during the defense case-in-chief under I.R.E. 804(b)(3) as a statement against Branam's interest. However, the district court excluded Yankey's testimony on the rationale that it was not proper rebuttal because it did not address something that was raised in the State's rebuttal case. The district court apparently was of the view that proper rebuttal was limited to impeaching Ward's or the detective's credibility, which Yankey's testimony did not do. Moses contends that the district court was incorrect in its understanding of the permissible scope of rebuttal evidence.

We agree that the district court erred in holding that rebuttal evidence is limited to that which impeaches the *witnesses* presented by the opposing party rather than that which is responsive to the *evidence* presented by the opposing party. Rebuttal evidence is evidence "which explains, repels, counteracts, or disproves evidence which has been introduced by or on behalf of the adverse party." *State v. Butcher*, 137 Idaho 125, 133, 44 P.3d 1180, 1188 (Ct. App. 2002); *State v. Floyd*, 125 Idaho 651, 655, 873 P.2d 905, 909 (Ct. App. 1994); *State v. Sorrell*, 116 Idaho 966, 968, 783 P.2d 305, 307 (Ct. App. 1989). "The mere fact that testimony might well have been presented during [a party's] case in chief does not, by itself, make it inadmissible for rebuttal." *State v. Rosencrantz*, 110 Idaho 124, 129, 714 P.3d 93, 98 (Ct. App. 1986). Here, the State presented Branam's prior inconsistent statements for the purpose of attacking Branam's credibility. Because Moses' proffered surrebuttal evidence was offered to bolster Branam's credibility, thereby counteracting the State's rebuttal evidence that attacked Branam's credibility, it was within the scope of permissible surrebuttal.[5]

## D. Prosecutorial Misconduct During Closing Argument

Moses also asserts three claims of prosecutorial misconduct during closing argument, only one of which we find merits discussion for guidance on remand. Moses complains that the prosecutor misrepresented the terms of the written immunity agreement under which Branam testified at the preliminary hearing. The agreement states:

> Branam's testimony at the preliminary hearing in the above-captioned matter will not be used against [Branam] in any manner in a criminal case, except that he may nevertheless be prosecuted or subjected to penalty for perjury, false swearing, or contempt committed in testifying at the aforementioned preliminary hearing.

---

[5] Our ruling is limited to determining whether the proffered evidence was within the scope of allowable surrebuttal. We do not address whether Yankey's or Beech's testimony was excludable on any other ground, e.g., as hearsay, as that issue has not been presented on appeal.

14

The written agreement was not placed in evidence at trial. Branam's preliminary hearing testimony, which *was* read into the record, included the following exchange:

> [PROSECUTOR VERHAREN]: By the terms of your immunity agreement here today, you realize you can't be prosecuted for what you've testified to?
> [Branam]: Right.

At closing argument the prosecutor said:

> You'll recall from the testimony that was read to you that Mr. Branam can't be testified--can't be prosecuted for what he said in that statement that was read to you. He was given immunity. Basically it means that whatever he says he can't get in trouble for, so whatever he says might as well benefit himself. What benefits him is staying in [Moses'] good graces.

Thus, the prosecutor's closing argument statement was consistent with the admitted trial evidence describing the immunity agreement, but was inconsistent with the actual immunity agreement because the immunity agreement provided that Branam could be prosecuted for perjury if he was untruthful in his testimony.

Moses asserts that because the prosecutor at trial also represented the State at Branam's preliminary hearing and presented the written immunity agreement to the magistrate court, he should have known what the immunity agreement said. Moses argues that regardless of the trial evidence, the prosecutor misrepresented the import of the immunity agreement, allowing the jury to infer that Branam was free to lie because he could not be prosecuted for perjury.

It is not necessary for this Court to resolve whether the prosecutor's description of the immunity agreement amounted to misconduct. For guidance on remand it suffices to say that if the prosecutor intends to argue the effect of the immunity agreement with respect to Branam's credibility again in a subsequent trial, the prosecutor's argument should be consistent with the written immunity agreement.

## III.

## CONCLUSION

Because the district court disallowed any inquiry, it is impossible to determine whether a juror who complained of intense anxiety was competent to fulfill his duties. Therefore, the judgment of conviction is vacated, and this case is remanded for a new trial.

Chief Judge GUTIERREZ **CONCURS.**

15

Judge GRATTON, **DISSENTING**.

I respectfully dissent. First, the issue framed in Moses' opening brief is constitutional error by the district court in the refusal *to allow Moses to inquire* of the juror who expressed some anxiety. Moses is quite clear and repetitive in his opening brief that *he* had a right to inquire of the juror. In fact, the only case upon which Moses relied relative to this asserted right to inquire was *Morgan v. Illinois*, 504 U.S. 719 (1992). *Morgan*, however, deals with voir dire and does not support the contention made in Moses' opening brief that he had a right to inquire of the juror on the second day of trial.[1] Nowhere in the opening brief is there any suggestion that the claimed error was the failure of the district court to conduct "some form of hearing" or to satisfy its "on-going duty to ensure that a defendant has a jury comprised of those who are capable of performing their duties as a juror during the progress of the trial." That issue was first raised in the reply brief. Issues raised for the first time in the reply brief will ordinarily not be addressed by this Court. *State v. Gamble*, 146 Idaho 331, 336, 193 P.3d 878, 883 (Ct. App. 2008). The Court spends considerable time addressing *Tanner v. United States*, 483 U.S. 107 (1987), and *State v. Bolen*, 143 Idaho 437, 146 P.3d 703 (Ct. App. 2006). These cases, and the argument thereon, were not addressed in Moses' opening brief--so as to give the State an opportunity to respond---but in the reply brief.[2] In regard to the issue actually raised in the opening brief, I am not persuaded that "Mr. Moses had a constitutional right to adequately inquire of this juror," and would so hold.

Second, I question whether the manner in which the issue was actually raised by Moses to the district court warrants any relief. The entirety of the record is as follows:

---

[1]    A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).

[2]    I am aware that the difference between whether counsel has a right to inquire or that the court has an obligation to inquire is somewhat subtle. Nonetheless, this subtle shifting occurs too routinely. Moreover, in this case, the shift in focus is evident by the fact that the cases primarily relied upon were first cited in Moses' reply brief. In addition, it is not clear from the Court's opinion what constitutional procedure it is requiring. On one hand, it is stated that the ordinary procedure is "to bring the juror before the court for questioning." On the other hand, it is stated that development of the record here was precluded "by denying Moses' request to inquire of the juror." It is not clear to me whether the Court is agreeing that Moses had a right to inquire or whether additional inquiry by the trial court would suffice.

16

Court:        I've got a note here from [the bailiff] that two of our jurors were involved in a motor vehicle accident this morning, and [Juror 69] informed me he's having anxiety issues and is not sure he can continue. We don't we--would it help [Juror 69] if he were just by himself in a different jury room?

Bailiff:      I didn't go into that, Judge.

Court:        Why don't you see if that would make him more comfortable while we wait and sort out where our other two jurors are?

Bailiff:      Okay.

Court:        And we can certainly have another bailiff check that room. All right. Well, I guess we've got nothing to do for a while.

. . . .

Court:        [Juror 54] was involved in the accident as well. I don't know about his physical condition, but his person has been removed to the Kootenai County Jail because he had a warrant for his arrest, so it would seem to me that [Juror 54] becomes our alternate juror. [Juror 69] has anxiety issues and is having some difficulty with the back and forth and the contentious nature of the proceedings. I asked [the bailiff] to see if [Juror 69] had any suggestions on what might be done to minimize that. Did he come up with anything?

Bailiff:      He did not, Judge.

. . . .

[Defense]:    Your Honor, I don't wish the Court to instruct the jury, but I would like to have a little more information on the juror that suffers with the anxiety to make sure that that's not something that is gonna prevent him from listening to every bit of the testimony. My concern is if he's under an anxiety attack in the courtroom, he may not be hearing the testimony, and I want to--I don't know how to have the Court make sure that his anxiety is not gonna impact his ability to take in the testimony as it comes in.

Court:        What's the State's position, if any?

[Prosecutor]: This juror was passed by myself as well as counsel, and no one delved into these potential issues, probably because we didn't know about them, but he didn't bring them up. He's not said anything to make anyone aware that he can't be fair and impartial in this case. I think to single him out and to question is gonna make a potential problem even worse, and basically we're worrying about something that we don't know if it happened or not, and I don't think we need to take a juror out and single him out and start asking him questions.

Court:        All right. Well, I am going to simply announce to the entire panel that if anybody feels at any time that they do need a break, to please bring that to the Court's attention, but otherwise, I'm not going to inquire further of [Juror 69].

. . . .

17

Court:         All right.  And all remaining twelve jurors are reminded again if for any reason you feel that you need to have a recess, get my attention, get [the bailiff's] attention, and we will immediately recess.  Everybody clear on that?  All right.

Defense counsel did not assert that she had a constitutional right to inquire on Moses' behalf. Defense counsel did not assert that the court had a duty of inquiry or that a hearing was required. Defense counsel indicated that she would like a "little more information" and did not "know how to have the Court" make sure the juror's anxiety would not have an impact on taking in testimony.  No objection at all was rendered by Moses either in conjunction with the request or to the district court's decision to not inquire further.  In *Bolen*, we noted that when an issue with a juror is brought to the court's attention, the court may conduct an inquiry and thereafter take appropriate remedial action.  *Bolen*, 143 Idaho at 441, 146 P.3d at 707.  The *Bolen* Court further stated:  "In addition, and of immediate impact to the instant appeal, *the matter would be preserved for appellate review to the extent that the defendant takes exception to the trial court's chosen course of action*."[3]  *Id.*  (Emphasis added.)  Here, Moses expressed no exception to the trial court's chosen course of action.  Thus, it is clear that the Court here is basing its review on an unasserted direct constitutional violation, rather than any abuse of discretion by the district court.

Third, in *Bolen*, defense counsel was aware of inattentiveness by jurors during the trial, but waited until after the verdict to bring the matter to the court's attention by way of motion for a new trial.  *Id.*  Although discussing the matter in the context of a preference to raise the issue during trial, the *Bolen* Court stated that with awareness of a potential juror issue, the court "could have, *in its discretion*, conducted an inquiry" into the asserted inattentiveness.  *Id.*  (Emphasis added.)  As noted above, this case is not analyzed under an abuse of discretion standard.  While

[3]     The majority suggests that I read this quote from *Bolen* out of context.  I disagree.  Based upon the Court's holding today, if the juror issue had been raised during trial in the *Bolen* matter, what exception to the trial court's chosen course of action would there be?  The defendant would not have been required to object to the "trial court's chosen course of action" as the trial court would have no discretion and no course of action to choose, as the court would be absolutely required to inquire of the juror(s).  In regard to fitness of a juror, the ultimate course of action, again not discretionary, would only be to allow the fit juror to continue, remove the juror no longer fit, or declare a mistrial as to the juror who has not been fit.  Here, Moses neither took exception to the trial court's decision not to inquire further or allowing the juror to continue.

the majority acknowledges that "it may be argued" that the matter is one of discretion with the trial court, the Court rejects the notion and disavows as "inappropriate" the reference to the trial court having discretion in the *Bolen* case.

Fourth, thus, the Court today holds, for the first time, that a defendant has a due process right and a trial court has a due process obligation to inquire regarding juror fitness during trial.[4] In refusing to apply an abuse of discretion standard of review, it seems to me imperative that the Court draw a very clear line as to when that inquiry must occur. As best as I can determine, there are two references in the majority opinion that might be asserted as that standard, although one is in the middle of a string of case cites ostensibly supporting a rejection of an abuse of discretion standard and the other in a footnote rejecting my interpretation of *Bolen*. As to the first, the Court states: "We have found no authority holding that when *a good faith, substantial question* is raised concerning a juror's capability to perform his duties or to act without bias, the court possesses discretion to deny inquiry." (Emphasis added.) As to the other, the Court states: "*Bolen* does not stand for the proposition that a trial court possesses discretion to refuse to allow inquiry when there has been brought to the court's attention *sufficient reason to question* whether a juror is qualified and competent to perform his function." (Emphasis added.) Given the context in which the italicized language is used, I can discern no precedential origin. I am further unsure of whether the alternative italicized language is deemed synonymous. While the "good faith, substantial question" and "sufficient reason to question" triggers for constitutionally required inquiry provide some point of reference for application by the trial courts, I submit it is vague. This Court's disagreement with the express or implied determination of whether there exists "good faith, substantial question" or "sufficient reason to question" will require a new trial in all cases, since, as discussed below, prejudice is presumed.

Fifth, the Court cites to several cases involving external influences on jurors.[5] However, this case involves a juror's emotional reaction to the trial. As to that, the Court states:

---

[4] I do not disagree that due process can be implicated in regard to a juror's continued fitness to serve. I do not agree, however, with the manner in which that constitutional implication is addressed in this case.

[5] *Tanner v. United States*, 483 U.S. 107, 127 (1987) (drugs and alcohol); *State v. DaSilva*, 742 A.2d 721, 725 (R.I. 1999) (juror learned granddaughter sexually abused during sexual abuse

19

We do not suggest that inquiry into a juror's fitness is required anytime a juror expresses that he or she is stressed or when jurors evidence[6] a normal human response to disturbing testimony or physical evidence. Indeed, jurors are commonly required to endure exposure to evidence of highly repugnant acts or conditions that would cause considerable distress to people of normal sensibilities. This is not, however, such a case.

I absolutely agree with everything but the last sentence. However, apparently being "stressed" or in "considerable distress" is somehow different from experiencing "anxiety," to the point of constitutional significance. A court need not inquire when a juror expresses experiencing stress or obviously exhibiting considerable distress in response to "highly repugnant" evidence, but must do so if the juror is "having some difficulty" with the contentious nature of testimony which causes "anxiety issues." How is a trial court to determine, from this statement, just what mental state or degree triggers this constitutional duty to inquire?[7] This case does not rise to the level (as opposed to exceeding) of the instances described by the Court when no inquiry is required.

Sixth, the issue does not seem to me to be the district court's failure to inquire, but the adequacy of the inquiry and chosen course of action. During voir dire, the district court asked whether anyone had a physical or mental disability or condition that may affect their ability to provide their undivided attention as a juror. Several prospective jurors responded, but the subject juror did not respond. Once the court was informed of the anxiety being experienced by the

trial); *Toles v. State*, 947 P.2d 180, 185 (Okla. Crim. App 1997) (juror's husband left her and she lost her job).

[6] I suppose this means an externally observable reaction such as wincing, blanching, crying, grimacing, shading one's eyes, gasping, etc.

[7] Beyond the type of information which might trigger the constitutional duty to inquire, I am unsure as to what source of such information the Court would hold triggers the duty. Here, the information regarding the juror's anxiety came from the juror. While the Court references requested inquiry, I am uncertain whether information from a juror without a defense request for inquiry might trigger a duty to inquire. Certainly, here, the request for a little more information by defense counsel appears to be sufficient. In addition, I am left to wonder about that "ever watchful" judge (*Smith v. Phillips*, 455 U.S. 209, 217 (1982)), who observes in a juror a "normal human response to disturbing testimony," perhaps anxiousness, and whether inquiry there would be triggered.

20

juror, the court did not do nothing; instead, the court asked the bailiff to determine if some accommodations could be arranged to help with the anxiety. The court further learned that the anxiety was the product of "having *some difficulty* with the back and forth and the contentious nature of the proceedings." (Emphasis added.) While the juror initially stated that he was not sure if he could continue, the juror never asked to be released nor stated that he could not continue, and this information came to the court during a break, which ended up being a rather extended break. The court was uniquely situated to know just how potentially anxiety-producing the contentious nature of the proceedings may have been, could be through the duration of the trial, or were in comparison with other trials. Defense counsel's concern was whether the juror was able to take in all of the evidence, but the juror was doing just that, i.e., was listening to the back and forth of the testimony. There is nothing that suggests that the juror had not, could not, or would not listen to the testimony. The district court's chosen course of action was to reiterate to the jury as a whole that which had been emphasized during voir dire, that if anyone needed a break, a break would be immediately taken. No objection to this chosen course of action was made by Moses.[8]

Seventh, there is no analysis of prejudice or harm in the asserted error. Error is not reversible unless it is prejudicial. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). With limited exceptions, even constitutional error is not necessarily prejudicial error. *Id.* Thus, we examine whether the alleged error complained of was harmless. *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005). Where a defendant meets his or her initial burden of showing that a constitutional violation has occurred, the State has the burden of demonstrating to the appellate court, beyond a reasonable doubt, that the violation did not contribute to the jury's verdict. *State v. Perry*, 150 Idaho 209, 227-28, 245 P.3d 961, 979-80 (2010). However, where the error in question is a constitutional violation that affects the base structure of the trial to the point that the trial cannot serve its function as a vehicle for the determination of guilt or innocence, the appellate court shall vacate and remand. *Id.* Such

---

[8]     The Court states that: "The court's response conveyed that additional breaks, if requested, would be the *only* relief that the juror could obtain. This may have dissuaded the juror from raising the issue again, regardless of the severity of his anxiety." (Emphasis added.) The district court's response did not, in my estimation, convey that a break was the only relief the juror could obtain regardless of the severity of his anxiety and it seems speculative to conclude that the court's response in any way dissuaded the juror from anything.

structural defects include the complete denial of counsel, a biased trial judge, denial of self-representation, denial of a public trial, defective reasonable doubt instruction, and erroneous deprivation of the right to counsel of choice. *Id*. at 222-23, 245 P.3d at 974-75. Although structural defects require automatic reversal, most constitutional violations will be subject to a harmless error analysis. *Neder v. United States*, 527 U.S. 1, 8 (1999). I do not believe that the issue here fits within the structural defects category. However, it appears that to the Court the circumstances here require reversal without objection or anything more. [9]

Lastly, there is no evidence that the juror could not or did not fulfill the juror's constitutional responsibility or which casts doubt on the reliability of the verdict. [10]

---

[9] Compare the prejudice analysis in the context of a conflict of counsel, which also implicates constitutional concerns. In *State v. Severson*, the Court stated:

> In order to ensure that a defendant receives conflict-free counsel, a trial court has an affirmative duty to inquire into a potential conflict whenever it knows or "reasonably should know that a particular conflict may exist." A trial court's failure to conduct an inquiry, *under certain circumstances*, will serve as a basis for reversing a defendant's conviction.
>
> Whether a trial court's failure to adequately inquire into a potential conflict of interest is enough, on its own, to justify reversal depends on whether the defendant objected to the conflict at trial. When a trial court fails to make a proper inquiry, but the defendant did not object to the conflict at trial, the defendant's conviction will only be reversed if he or she can prove that an actual conflict of interest adversely affected his lawyer's performance. The defendant need not, however, show prejudice in order to obtain relief. On the other hand, once a defendant raises a timely objection to a conflict, the trial court is constitutionally obligated to determine whether an actual conflict of interest exists. A court's failure to make a proper inquiry after a defendant's timely objection will result in the automatic reversal of the defendant's conviction. Because the trial court's duty to inquire after a defendant makes a timely objection is a separate and distinct obligation, a defendant in such circumstances need not show that an actual conflict adversely affected the lawyer's performance.

*State v. Severson*, 147 Idaho 694, 703, 215 P.3d 414, 423 (2009) (emphasis added) (citations and footnotes omitted). As noted, the Court here conducts no prejudice analysis and no differentiation is made dependent on an objection being raised.

[10] The majority refers to my frustration regarding the necessity of a retrial in this matter. I note that the district court in this case easily could have made a better record for our review. However, my concern is not so much the necessity of retrying this case as it is the potential necessity of retrying numerous cases in the future.